UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

CHRISTOPHER BOWDEN,

      Plaintiff,

v.                                                    Case No.   2:23-cv-382-KCD-NPM

FILIBERTO TORRES,
EMMANUEL GOVEA, and
JOHN DOE,

      Defendants.

_____/

## ORDER

Plaintiff Christopher Bowden initiated this action by filing a civil rights complaint against six employees of Charlotte Correctional Institution (CCI). (Doc. 1.) Defendants Officer Emmanuel Govea, Sergeant Filiberto Torres, and Officer John Doe (unserved) remain in this action.[1]  Govea and Torres move to dismiss Bowden's latest complaint. (Doc. 83.)

After reviewing the applicable record, the Court grants the motion and dismisses all claims against Govea and Torres. The Court also *sua sponte* dismisses the claims against John Doe.

---

[1] The Court encountered considerable difficulty serving the complaint. (*See* Doc. 20; Doc. 34; Doc. 36; Doc. 38; Doc. 41; Doc. 42; Doc. 57; Doc. 60; Doc. 62.) The piecemeal service resulted in multiple motions to dismiss. The Court dismissed Dawson, Brock, and Frizziola on February 12, 2025. (Doc. 74.) Next, the Court granted Frost's motion to dismiss. (Doc. 78.) The Court also dismissed Bowden's claims for declaratory relief as moot. (*Id.* 8–9, 12.)

## I. Pleadings

Bowden alleges the following facts in his amended complaint:[2]  On April 27, 2022, Bowden and Captain Frost engaged in a heated "caustic exchange" regarding Bowden's filing of grievances and lawsuits. (*Id.* at 6, ¶ 6.) Frost radioed for Officer Marshall and told him to get Bowden "cleared for chemical agents, search [ Bowden's] cell, and put him on (72) hour property restriction." (*Id.*) Bowden, annoyed at Frost's questions regarding the grievances and lawsuits, asked him "why he insisted on molesting" him. (*Id.*) Frost answered, "so sue me" before leaving the area. (*Id.*)

Marshall searched Bowden's cell, and when no contraband was discovered, he "counseled" Bowden and departed. Bowden—who was allegedly emotionally distraught from his encounter with Frost—asked to speak with someone from mental health. (Doc. 56 at 6, ¶ 3.) Around lunchtime, Govea asked Bowden what he did "to piss off Frost," but Bowden ignored the question and "continued his cell activities." (*Id.*)

Around 2:30 p.m., Govea came to escort Bowden to his medical call out. (Doc. 54 at 6, ¶ 5.) Torres and John Doe had left the y-dorm control booth unsecured and unattended at that time. (*Id.* at 7, ¶ 6.) Noticing the unsecured

---

[2]This is a subset of Bowden's alleged facts because the instant motion concerns only Torres and Govea. (Doc. 83.) Nevertheless, the Court includes some allegations supporting Bowden's claims against other defendants to provide context and to understand Plaintiff's grievance on this incident.

control booth, Bowden "ended the call out" and told Govea that he had a "psych emergency and wanted to kill himself." (*Id.* ¶ 7.) He began "berating and upbraiding the actions of Torres and John Doe." (*Id.*) Govea became "enraged" at Bowden's words and "manipulat[ed] [Bowden's] wrist restraints to cause [Bowden] to react in shock from acute pain." (*Id.* ¶ 8.) Govea attempted to slam Bowden into the cell wall and redirect him face-first to the ground. (*Id.* ¶ 9.) However, Govea lost his footing and fell down. (*Id.*) Bowden took a step away from Govea and said, "Man, what the f*** are you doing?" (*Id.*) Torres then ran into Bowden and tackled him to the ground, causing Bowden pain. (*Id.* ¶ 10.) Torres put his knee on Bowden's spine and tightened his cuffs "in an excessive manner," causing nerve damage and numbness in Bowden's hands. (*Id.*) Torres punched Bowden in the face several times, and Govea struck him with both fists. (*Id.* ¶ 11.) John Doe assisted by kicking Bowden as he declared he was suicidal. (*Id.* ¶ 12.) Govea stated, "I'll give your a** something to write up." (*Id.*) Bowden asserts that he did not resist or threaten the officers, nor break any prison rules. (*Id.* ¶ 13.)

After the officers' use of force, Bowden was given a post use-of-force exam and complained of pain and injury to his back, face, arms, legs, head, and torso. He was then escorted back to his cell. (Doc. 1 at 7, ¶ 13.) Bowden was placed on self-harm observation status. (*Id.* at 8, ¶ 16.)

3

After Bowden's disciplinary hearing—which resulted in a verbal reprimand—Bowden asked Assistant Warden Dawson why he was being upgraded to CM 1. (Doc. 56 at 8, ¶ 21.) Dawson answered, "Maybe this will make you think twice about suing my staff for doing their jobs." (*Id.*)

Bowden alleges that his overall physical condition has deteriorated because of the events described above. He has physical pain in his back and nerve damage in his wrists and hands. (Doc. 56 at 8, ¶ 23.) He suffers spells of depression and anxiety. (*Id.*) He seeks declaratory relief and damages. (*Id.* at 9.)

In their motion to dismiss, Defendants argue that Bowden's claims fail for two reasons: (1) Bowden did not exhaust any First Amendment retaliation, Eighth Amendment failure-to-protect, or state tort assault claims against any defendant; and (2) Bowden has not stated a claim for retaliation, excessive force, failure-to-protect, or deliberate indifference. (Doc. 83 at 12–14.)

Bowden filed a response and an amended response to the motion to dismiss. (Doc. 94; Doc. 95.)[3] Bowden restates many of the allegations against the defendants. While the Court will read and consider Bowden's arguments as they relate to the specific defendants and claims that form the basis of the motion to dismiss, Bowden may not amend or expand the allegations in his

---

[3] Because the amended response was timely, it supersedes the original response, and the Court considers Bowden's first response a nullity.

complaint by raising new factual allegations or theories of relief. *See Burgess v. Religious Tech. Ctr., Inc.*, 600 F. App'x 657, 665 (11th Cir. 2015) ("We repeatedly have held that plaintiffs cannot amend their complaint through a response to a motion to dismiss."). Therefore, additional (or different) facts alleged in Bowden's response will not be considered for the purpose of deciding this motion to dismiss.

## II. Legal Standards

### A.    Motion to Dismiss

In evaluating a motion to dismiss, this Court accepts as true all allegations in the complaint and construes them in the light most favorable to the plaintiff. *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1262-63 (11th Cir. 2004). Further, this Court favors the plaintiff with all reasonable inferences from the allegations. *Stephens v. Dep't of Health & Hum. Servs.*, 901 F.2d 1571, 1573 (11th Cir. 1990) ("On a motion to dismiss, the facts stated in [the] complaint and all reasonable inferences therefrom are taken as true."). However, the Supreme Court has explained that factual allegations must be more than speculative:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations

> must be enough to raise a right to relief above the
> speculative level.

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).[4] Further, courts are not

"bound to accept as true a legal conclusion couched as a factual allegation."

*Papasan v. Allain*, 478 U.S. 265, 286 (1986).

The Supreme Court has established a two-pronged approach to evaluate

motions to dismiss. First, a reviewing court determines whether a plaintiff's

allegation is merely an unsupported legal conclusion that is not entitled to an

assumption of truth. Next, it determines whether the complaint's factual

allegations state a claim for relief that is plausible on its face. *Iqbal*, 556 U.S.

at 678–79. Evaluating a complaint under Rule 12(b)(6) is "a context-specific

task that requires the reviewing court to draw on its judicial experience and

common sense." *Id.* at 679.

## B.    Exhaustion

The Prison Litigation Reform Act (PLRA), which applies here, has an

exhaustion requirement:

> No action shall be brought with respect to prison
> conditions under section 1983 of this title, or any other
> Federal law, by a prisoner confined in any jail, prison,
> or other correctional facility until such administrative
> remedies as are available are exhausted.

---

[4] Unless otherwise indicated, all internal quotation marks, citations, and alterations have
been omitted in this and subsequent citations.

42 U.S.C. § 1997e(a). The PLRA's exhaustion requirement is designed to "[afford] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Porter v. Nussle*, 534 U.S. 516, 524-25 (2002).

The Supreme Court has explained that exhaustion must be "proper." *Woodford v. Ngo*, 548 U.S. 81, 93 (2006). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Id.* at 90-91. In other words, an institution's requirements define proper exhaustion. *Jones v. Bock*, 549 U.S. 199, 218 (2007). Thus, prisoners must do more than simply initiate grievances; they must also appeal any denial of relief through all levels of review that comprise the administrative grievance process. *Bryant v. Rich*, 530 F.3d 1368, 1378 (11th Cir. 2008). Further, an inmate who files an untimely grievance or simply spurns the administrative process until it is no longer available fails to satisfy the exhaustion requirement of the PLRA. *Johnson v. Meadows*, 418 F.3d 1152, 1157-59 (11th Cir. 2005).

The Eleventh Circuit directs district courts to consider failure to exhaust in a motion to dismiss instead of a motion for summary judgment. *Bryant*, 530 F.3d at 1374-75. When (as here) the defendant alleges that a prisoner has not exhausted his administrative remedies, courts are permitted to hear evidence

outside of the record. *Id.* at 1377 n.16. Accordingly, the parties may submit documentary evidence concerning the exhaustion issue, and doing so will not require the conversion of the motion to dismiss into one for summary judgment. *Id.* In addition, the district court may resolve factual questions concerning a plaintiff's alleged failure to exhaust if the factual disputes do not decide the merits and the parties had sufficient opportunity to develop a record. *Id.* at 1376.

To determine whether a complaint should be dismissed for failure to exhaust administrative remedies, the court first considers the factual allegations in the defendant's motion and those in the plaintiff's response. If they conflict, the court accepts, for purposes of the motion, the plaintiff's version of the facts as true. *See Turner v. Burnside*, 541 F.3d 1077, 1082 (11th Cir. 2008). If, in that light, the defendant is entitled to have the complaint dismissed for failure to exhaust administrative remedies, it must be stricken. *Id.* If the court determines that the complaint is not subject to dismissal at step one, "the court then proceeds to make specific findings in order to resolve the disputed factual issues related to exhaustion." *Id.* "Once the court makes findings on the disputed issues of fact, it then decides whether under those findings the prisoner has exhausted his available administrative remedies." *Id.* at 1083.

## III. Discussion

Liberally construing the operative complaint, Bowden asserts four claims against Torres and Govea based on the April 22, 2022 use of force: (1) a First Amendment retaliation claim; (2) an Eighth Amendment excessive force claim; (3) an Eighth Amendment deliberate indifference claim based on Defendants' alleged failure to intervene in the use of force; and (4) state law assault and battery claims. (Doc. 56 at 5–6.)

### C. Bowden's retaliation and failure-to-intervene claims were not exhausted.

Defendants offer a statement from Alan McManus, the Chief of the FDOC Bureau of Inmate Appeals. (Doc. 83-3.) McManus states that Bowden was aware of, and has frequently used, the FDOC's grievance process. (*Id.* at 4, ¶ 10.) McManus also states that the only grievance filed regarding the April 27, 2022, incident (and the only grievance related to Govea and Torres) is number 510-2205-0105 (No. 105). (*Id.*) McManus attached a copy of No. 105 to his statement. (Doc. 83-3.) The grievance describes the incident as follows:

> Pursuant to 33-208.002, all CHC1 employees are required to familiarize themselves with all rules and regulations pertaining to their positions and duties and they are required to abide by those regulations. On April 27, after an exchange of words regarding the active violation of my procedural due process pursuant to 33-01.800(10)(c) (To wit: None of the items of clothing, bedding, or personal property that was removed from Y1-109 were removed to prevent me from inflicting injury to self or others, to prevent the

9

destruction of property or equipment, or to prevent security from accomplishing functional essentials to the unit or institution.) Further, the removal of my bedding and linens were violations of 33-601.800(1)(b) as there is no documentation on my form DC6-229 to suggest any potential harm to myself or others or any threat to the security of this institution. In the commission of Ofc. Govea employing the custodial grasp to my right bicep, he purposefully manipulated the nerve junction in my arm invoking me to react from the brutal pinch of nerves. As I was restrained already, I was not combative as Ofc. Govea attempted to use hands to slam me face first on the ground and ended up looking like a turtle breakdancing. I allowed myself to be taken to the floor by Sgt. F. Torres who unreasonably tightened the cuffs excessively tight on my wrists, restricting circulation in my hands, maneuvering my body so that the majority of his body weight rested on my bent wrists and back, causing pain. I was not resisting as I was compliant w/ all orders, subdued and effectively incapacitated when Sgt. F. Torres and Sgt. P. Crawford repeatedly struck me in the face & head in violation of 33-208.002(8). *THIS IS AN ABUSE ALLEGATION ON STAFF*

Remedy: I am requesting the fixed wing/handheld Y-dorm security surveillance footage of 4/27/22 from 2pm-4:15pm to be saved and or preserved for civil litigation and to be included into the investigation pursuant to 33-602.033(4)(1) and (12) F.A.C.

(Doc. 83-3 at 8, 10 (minor alterations and corrections for clarity).) Bowden

received the following response:

Your informal grievance has been received and reviewed. The issue of your complaint is currently under investigation for appropriate action. Upon completion of necessary action, information will be provided to appropriate administrators for final determination and handling. BE ADVISED THIS

MAY OR MAY NOT RESULT IN PERSONAL INTERVIEW WITH YOU.

As action has been initiated, you may consider your grievance APPROVED from that standpoint. **This does not constitute substantiation of your allegations.**

(Id. at 9.)[5] Bowden neither asserts that he filed other relevant grievances, nor argues that No. 105 is not an accurate copy of the one he filed. In fact, he attached the same grievance to his amended response. (Doc. 95-1.) Accordingly, there are no disputed issues of fact, and the Court can resolve the exhaustion question at step one of the *Turner* test.

Under the First Amendment, a prison official may not retaliate against a prisoner for exercising his right to free speech. *Farrow v. West*, 320 F.3d 1235, 1248 (11th Cir. 2003). And "[a] prisoner can establish retaliation by demonstrating that the prison official's actions were the result of his having filed a grievance concerning the conditions of his imprisonment." *Id.* But the only wrongful conduct alleged in No. 105 is the prison employees' removal of

---

[5] If a grievance (such as No. 105) is approved for further investigation and the inmate is issued a corrected formal grievance response, the inmate has not exhausted all of his available administrative remedies at that point. Specifically, "[i]f the grievance or appeal is returned to the institution or facility for further investigation or response, the inmate may, following receipt of that response, re-file with the Office of the Secretary . . . if he is not satisfied with the response." Fla. Admin. Code 33-103.007(8). But Defendants do not allege that Bowden was provided an amended response to No. 105 after the initial response approving it for investigation. Accordingly—on the record before this Court—there was nothing for Bowden to appeal, and the claims raised in No. 105 were exhausted.

Bowden's personal items from his cell, in contravention of prison regulations, and the use of excessive force by Govea, Torres, and Crawford. The grievance does not allege, or even suggest, that any officer used force against him in retaliation for Bowden's exercise of his First Amendment rights. Thus, Bowden did not exhaust his retaliation claim against Govea, Torres, or any other officer, and the claim is dismissed under 42 U.S.C. § 1997e(a). *See Arias v. Perez*, 758 F. App'x 878, 882 (11th Cir. 2019) ("It would subvert the PLRA's purpose of granting prison authorities 'time and opportunity to address complaints internally before allowing the initiation of a federal case,' if a prison could grant all the relief a prisoner asked for and yet still find itself subject to suit."); *Tate v. Andres*, No. 2:18-cv-822 KJM ACP, 2022 WL 1104016, at *8 (E.D. Cal. Apr. 13, 2022) ("Plaintiff failed to properly exhaust his retaliation claim because he did not include allegations of retaliation in his initial grievance [alleging excessive force] and did not submit a separate grievance on that issue.").

Likewise, Bowden did not allege that any prison official failed to protect him from other officers' use of excessive force. Bowden was required to exhaust every claim raised in his amended complaint before filing suit. As such, he was required to either file a separate grievance or argue in No. 105 that officers were deliberately indifferent to the alleged use of force by Govea, Torres, and Doe. Because he did not do so, the deliberate indifference (failure-to-protect)

claims are also dismissed. *See*, *e.g.*, *Manning v. Reed*, No. 2:19CV00147-BSM-JTK, 2020 WL 6221159, at *4 (E.D. Ark. Sep. 29, 2020) (noting that "where an inmate alleged excessive force in his grievances but did not allege that any of the prison officials failed to protect him from that force," the plaintiff deprived prison officials "of the opportunity to investigate and resolve a failure to protect claim prior to the filing of a lawsuit in federal court").[6]

Finally, because Bowden complained about the use of force by Govea, Torres, and Doe, the Court finds that the facts alleged in No. 105 exhausted his Eighth Amendment excessive force and state law assault and battery claims against these defendants.

### D. Bowden's excessive force claims are subject to dismissal.

To survive a motion to dismiss, a prisoner's Eighth Amendment excessive force claim must allege facts showing that the defendant prison official applied force "maliciously and sadistically for the very purpose of causing harm" instead of "in a good faith effort to maintain or restore discipline." *Campbell v. Sikes*, 169 F.3d 1353, 1374 (11th Cir. 1999). However, not "every malevolent touch by a prison guard gives rise to a federal cause of action . . . The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition *de minimis*

---

[6] Because the retaliation and failure-to-protect claims are unexhausted, the Court will not discuss Defendants' other arguments for dismissal.

uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." *Hudson v. McMillian*, 503, U.S. 1, 9–10 (1992).

To support their motion, Defendants offer a video (Exhibit B) from several CCI stationary cameras showing the use of force. (Doc. 80; Doc. 82.) Generally, when deciding a motion to dismiss, the district court limits its consideration to the pleadings and exhibits attached to the complaint and incorporated by reference. *Baker v. City of Madison, Ala.*, 67 F.4th 1268, 1276 (11th Cir. 2023). In *Baker*, the Eleventh Circuit addressed "whether the incorporation-by-reference doctrine also applies to [video] camera footage." *Baker*, 67 F.4th at 1277. The Circuit held that "the district court properly considered . . . body camera footage" at the motion to dismiss stage because "the requirements of the incorporation-by-reference doctrine [were] met." *Id.* Specifically, the *Baker* plaintiff referenced the body camera footage in his complaint; the footage clearly depicted all the relevant conduct central to the plaintiff's claims; and the plaintiff did "not challenge the authenticity of the footage." *Id.* Subsequently, in *Johnson v. City of Atlanta*, the Eleventh Circuit considered a dash-cam case in which the plaintiff had not specifically referenced the video in his complaint. While recognizing the holding in *Baker*, the Circuit clarified that "when resolving a motion to dismiss . . . a court may properly consider a document not referred to or attached to a complaint under the incorporation-by-reference doctrine if the document is (1) central to the

plaintiff's claims; and (2) undisputed, meaning that its authenticity is not challenged." 107 F.4th 1292, 1300 (11th Cir. 2024). In other words, there is no requirement that Bowden must have referenced the video in his complaint before this Court can consider it when resolving Defendants' motion to dismiss.

Here, the requirements for incorporation by reference are met. Bowden referenced the camera footage in No. 105, which he attached to his amended response. (Doc. 95-1.) The videos clearly depict the use of force at issue in this complaint, and Bowden does not challenge the authenticity of the footage despite having an opportunity to do so.[7] Thus, the Court will review and consider the video.

The video shows the following:[8] At 14:16:40, Bowden and Govea stand at the end of a hallway. Bowden argues with Govea, who has his left hand on Bowden's right elbow and his right hand at his side. At 14:17:00, Bowden tells Govea that he is not going anywhere. Bowden becomes increasingly agitated, begins to yell, and starts to rock from foot to foot. At 14:18:15, Govea tells Bowden that he will receive a disciplinary report (DR) if he does not comply.

---

[7] In his response brief, Bowden did not challenge Defendants' reliance on the video but stated that he had not yet viewed it. (Doc. 95 at 5.) The Court directed Defendants to ensure that Bowden had an opportunity to view the camera footage and directed Bowden to supplement his response to the motion after doing so. (Doc. 99.) Bowden acknowledged that he viewed the footage (Doc. 100-1), but he did not augment his response or challenge the authenticity of the video in any manner.

[8] The time stamps refer to the video offered by Defendants as Exhibit B. All time stamps are approximate.

Bowden continues to yell and rock. Govea remains still with his right hand at his side. At 14:18:45, Govea begins to talk over Bowden (who is still yelling) and tells him to stop "talking like a fucking moron." An unintelligible discussion follows, and at 14:19:30, Bowden tells Govea that "if you beat me up, I'll sue you man." Bowden's rocking becomes more pronounced. At 14:19:44, Bowden suddenly lunges forward, as if running away. Govea follows, using his right hand—for the first time—to attempt to grab Bowden by the waist. At 14:19:50, Bowden uses his body weight and shoulder to forcefully shove Govea to the ground, and the officer lands on his back but continues to hold onto Bowden's left leg. Five seconds later, Defendant Torres rounds the corner, and he and Govea direct Bowden to the floor. At 14:20:00, Bowden begins to chant "ya'll pay" over and over. At 14:20:37, Bowden tells the officers, "You just fucked up. I'm paid." At this time, Defendants are either kneeling or lying on the floor (neither officer is on Bowden's body), and their feet are visible. Other officers arrive, but nobody strikes Bowden, who continues taunting the officers. At approximately 14:22:15 somebody tells Bowden to show his hands, at which time he begins to yell and struggle. At 14:22:35, Bowden begins to yell "keep punching me," "owwww," and "I'm not even resisting" even though the video shows no officer punching or otherwise making an aggressive movement towards him. At 14:23:38, an officer reads something to Bowden about a disciplinary infraction, and Bowden begins to scream and cry as the officers lift

him to his feet. At 14:24:03, the officers escort Bowden from camera view while Bowden continues to loudly cry.

In Eighth Amendment excessive force claims, the "core judicial inquiry" is "not whether a certain quantum of injury was sustained, but rather whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010). In determining whether force was applied maliciously and sadistically, a court considers: (1) the need for the application of force; (2) the relationship between the need and the amount of force used; (3) the extent of the injury inflicted upon the prisoner; (4) the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials based on facts known to them; and (5) any efforts made to temper the severity of a forceful response. *Whitley v. Albers*, 475 U.S. 312, 321 (1986). Any action taken should be viewed in light of the wide-ranging deference accorded to prison officials who are acting to preserve discipline and institutional security. *Hudson v. McMillian*, 503 U.S. 1, 6 (1992).

Applying the *Whitley* factors to the facts as shown in the video, the Court concludes that no constitutional violation occurred. *See Shaw v. City of Selma*, 884 F.3d 1093, 1098 (11th Cir. 2018) (recognizing that when a video in evidence "obviously contradicts the nonmovant's version of the facts," the court accepts the video's depiction "instead of the nonmovant's account"). First, the video

shows that Defendants could have reasonably perceived a need for the use of force. Bowden, who is a prisoner, lunged forward in what objectively appears to be an attempt to escape Govea's grasp. It was not unreasonable for Govea to then attempt to grab Bowden around the waist to prohibit an escape. The video shows Bowden aggressively use his body weight to push against Govea and slam him to the floor. When Torres rounded the corner, he observed Govea on the ground with his arms around Bowden's legs while Bowden was still standing. It was reasonable for Torres to forcefully push Bowden to the floor in an attempt to regain control and to keep Bowden from harming Govea. The first and fourth *Whitley* factors favor the defense.[9]

And this was not a protracted scuffle. Less than forty seconds lapsed between Bowden's attempt to escape Govea's grasp and the start of Bowden's taunts that he was going to get paid. The video does not show anybody strike or kick Bowden at any point. Defendants' feet are visible throughout the struggle and their hands are occupied trying to subdue Bowden.[10] And while

---

[9] Bowden fares no better if he argues that he lunged forward only because Govea twisted his elbow. The video shows that Govea had only one hand on Bowden and was not leaning in such a manner as to apply substantial torque to Bowden's arm. Moreover, Bowden refused to comply with Govea's lawful order for more than three minutes, and an appropriate degree of force to compel compliance with a valid order was justified. *Brown v. Smith*, 813 F.2d 1187, 1189 (11th Cir. 1987).

[10] Plaintiff began to struggle anew at 14:22:15 when one of the defendants told Plaintiff to show his hands. But supporting a conclusion that Plaintiff's words were designed to annoy the officers (rather than alert them to his discomfort) were his repeated shouts of "keep punching me," "owwwwww," and "I'm not even resisting" when the video shows no punching motions or any other aggressive moves by any officer.

Bowden could not have been comfortable during the incident, "[t]he infliction of pain in the course of a prison security measure . . . does not amount to cruel and unusual punishment simply because it may appear in retrospect that the degree of force authorized or applied for security purposes was unreasonable, and hence unnecessary in the strict sense." *Whitley*, 475 U.S. at 319. The second *Whitley* factor favors the defense.

Finally, Govea spent more than three minutes trying to cajole Bowden into complying with his order, which hardly shows a malicious or sadistic motive or any intent to use force. And although Govea appeared annoyed at Bowden's recalcitrance, nothing in the video suggests that he became "enraged" as Bowden alleges. To the contrary, Govea's relaxed posture, with one hand by his side, suggests that he did not tense up until Bowden suddenly attempted to pull away and flee. Moreover, Bowden was taken to medical immediately after he was subdued. The fifth *Whitley* factor favors the defense.

Bowden has not plausibly shown that any defendant used force maliciously and sadistically to cause harm. Four of the five *Whitley* factors strongly favor the defense.[11] Even if Govea could have further counseled

---

[11] The video does not show the extent of Bowden's injuries. Thus, the Court accepts his description of back pain and nerve damage in his wrists and hands as true. However, these injuries are in line with what would be expected during an altercation with several corrections officers and do not suggest that the use of force was greater than depicted in the video. Thus, the third *Whitley* factor favors neither the defense nor the plaintiff.

Bowden to comply with his order, Bowden's allegation of excessive force "falls far short of a showing that there was no plausible basis for [the defendants'] belief that this degree of force was necessary." *Whitley*, 475 U.S. at 323. Thus, Bowden's excessive force claims against Govea and Torres are dismissed for failure to state a claim on which relief may be granted. And although Bowden's John Doe defendant has not been identified, the video does not depict the use of excessive force by <u>any</u> officer. Accordingly, the excessive force claim against Defendant John Doe is dismissed under 28 U.S.C. § 1915(e)(2)(B) for failure to state a claim on which relief may be granted.

### E. The Court declines to exercise jurisdiction over Bowden's state law claims.

Bowden also raises state law claims for assault and battery. However, as discussed above, all the federal claims in this action have been dismissed. And "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine— judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988) (superseded by statute on other grounds); *see also* 28 U.S.C. § 1367(c). Here, all claims over which this Court had original jurisdiction are subject to dismissal, and the Court will not retain jurisdiction over the remaining state-law claims.

Accordingly, any state-law claims are dismissed without prejudice. Bowden may refile those claims for consideration in the appropriate state court.[12]

## IV. Conclusion

All remaining claims in this action are dismissed as either unexhausted or for failing to state a claim on which relief may be granted. Because Bowden was required to exhaust all claims before filing this complaint and because Defendants' video clearly establishes that Defendants used reasonable force, further amendment would be futile. Thus, the dismissal is without leave to amend. *See L.S. ex rel. Hernandez v. Peterson*, 982 F.3d 1323, 1332 (11th Cir. 2020) (recognizing that leave to amend is futile "if an amended complaint would still fail at the motion-to-dismiss or summary-judgment stage").

Accordingly, it is **ORDERED**:

1. The motion to dismiss filed by Defendants Govea and Torres (Doc. 83) is **GRANTED**. Bowden's retaliation claims, and Eighth Amendment failure-to-protect claims are **DISMISSED** without prejudice as unexhausted. Bowden's excessive force claims are **DISMISSED** with prejudice for failure to state a claim on which relief may be granted.

---

[12] The Court take so position on the merits of Plaintiff's state law claims or their likelihood of success in state court.

2.  Bowden's excessive force claims against Defendant John Doe are **DISMISSED** with prejudice for failure to state a claim on which relief may be granted. 28 U.S.C. § 1915(e)(2)(B)(ii).

3.  With no remaining claims or defendants, this case is **DISMISSED.**

4.  The Clerk is **DIRECTED** to enter judgment, deny any pending motions as moot, terminate any deadlines, and close this case.

**ENTERED** in Fort Myers, Florida on November 25, 2025.

Kyle C. Dudek
United States District Judge